## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW MEYER, Individually and on behalf of all other similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>CONCORDIA INTERNATIONAL CORP., MARK THOMPSON, and ADRIAN DE SALDANHA,<br><br>     Defendants. | Case No. 1:16-cv-06467 (RMB) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (together with all Exhibits hereto, "Stipulation"), dated as of December 20, 2018, which is entered into by and among (i) Lead Plaintiff Vincent Yip ("Lead Plaintiff"), on behalf of themselves and on behalf of the Settlement Class (as defined herein), and (ii) defendants Concordia International Corp. ("Concordia" or "the Company"), Mark Thompson, Adrian de Saldanha, Edward J. Borkowski, and Wayne Kreppner (collectively, "Defendants," and collectively with Lead Plaintiff, "Settling Parties"), by and through their undersigned attorneys, states all of the terms of the settlement and resolution of this matter by the Settling Parties (as defined herein) and is intended by the Settling Parties fully and finally to release, settle, resolve, remise, and discharge the Released Claims (as defined herein) against the Released Parties (as defined herein) and dismiss with prejudice the above-captioned action, subject to the approval of the United States District Court for the Southern District of New York (the "Court") and the terms and conditions expressly provided herein.

Throughout this Stipulation, all terms used with initial capitalization, but not immediately defined, shall have the meanings ascribed to them in Section 1 below.

**WHEREAS:**

### A.      The Securities Exchange Act of 1934 Action

On August 15, 2016, the first of the two consolidated actions, originally styled as *Meyer v. Concordia International Corp., et al.,* 1:16-cv-06467 (the "Action"),  was filed in the United States District Court for the Southern District of New York. The Action alleges violations of the Securities Exchange Act of 1934 against Defendants Concordia, Mark Thompson, and Adrian de Saldanha. Dkt. No. 1.

On November 8, 2016, the Court appointed Tony Bernardo as Lead Plaintiff for the Action and appointed Lead Plaintiff's chosen counsel, The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 35.

On December 8, 2016, then-Lead Plaintiff Tony Bernardo, and Named Plaintiffs Bryan Boothby and Elise Kern filed a Consolidated Amended Class Action Complaint (the "Complaint") asserting claims against Defendants Concordia, Mark Thompson, Adrian de Saldanha, Edward J. Borkowski, and Wayne Kreppner under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendants Mark Thompson, Adrian de Saldanha, Edward J. Borkowski, and Wayne Kreppner under Section 20(a) of the Exchange Act. Dkt. No. 38.  The Complaint alleges that, during the Class Period, Defendants made materially false and misleading statements about: (i) the status of Concordia's promotional efforts for an irritable bowel syndrome medication owned by Concordia called Donnatal®; and (ii) Donnatal®'s insurance reimbursement status.  The Complaint further alleges that the price of

Concordia common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was allegedly revealed.

On February 20, 2017, Defendants filed a motion to dismiss the Complaint and an accompanying Memorandum of Law in Support. Dkt. Nos. 52, 54.

On July 28, 2017, the Court issued a "Decision & Order" on the pending motion to dismiss, denying in part and granting in part the motion. Dkt. No. 61.

Discovery in the Action commenced in November 2017. Lead Plaintiff prepared and served initial disclosures, requests for production of documents, exchanged numerous letters with Defendants concerning discovery issues, served document subpoenas on third parties, and deposed numerous witnesses. Defendants and third parties produced over 80,000 documents to Lead Plaintiff.

On February 7, 2018, Lead Plaintiff filed a Motion for Class Certification and accompanying Memorandum of Law in Support. Dkt. Nos. 83, 84.

On February 7, 2018, Lead Plaintiff filed a Motion to Substitute Vince S. Yip as Lead Plaintiff in this Action. Dkt, No. 80.

On May 23, 2018, the Court ordered that Vincent Yip replace Tony Bernardo as Lead Plaintiff. Dkt. No. 132.

On July 27, 2018, without addressing the merits of the Class Certification motion, the Court denied Lead Plaintiff's Class Certification motion without prejudice. Dkt. No. 160.

On September 25, 2018, Lead Plaintiff filed a Motion for Leave to File a Consolidated Second Amended Class Action Complaint. Dkt. No. 172. The Court did not rule on this motion.

### B.       The Settlement

Counsel for the Settling Parties attended two mediation sessions with Robert Meyer, on December 15, 2017, in New York, New York, and on March 6, 2018, in Los Angeles, California. Neither mediation resulted in a settlement of the Action.

On November 13, 2018, the Settling Parties executed a Memorandum of Understanding ("MOU"), outlining the Settlement. This Stipulation memorializes the agreement between the Settling Parties fully and finally to settle the Action and to fully release all Released Claims against the Released Parties with prejudice in return for specified consideration. The Settling Parties agree and acknowledge that this Stipulation supersedes and replaces the MOU.

### C.       The Defendants' Denial Of Wrongdoing And Liability

Throughout the course of the Action and in this Stipulation, Defendants have denied and continue to deny each, any and all allegations of wrongdoing, fault, liability or damage whatsoever asserted in the Action. Defendants have also denied, *inter alia*, the allegations that Lead Plaintiff or the Settlement Class have suffered damages or that Lead Plaintiff or the Settlement Class were harmed by the conduct alleged in the Action. Defendants continue to believe the claims asserted against them in the Action are without merit.

Defendants have agreed to enter into this Stipulation solely to avoid the uncertainties, burden and expense of further litigation and to put the Released Claims to rest finally and forever. Nothing in this Stipulation shall be construed as an admission by either Defendants or any of the Released Parties of any wrongdoing, fault, liability or damages whatsoever.

### D.       Claims Of Plaintiff And Benefits of Settlement

Lead Plaintiff believes that the claims he asserted on behalf of the Settlement Class in the Action have merit. Lead Plaintiff, however, recognizes and acknowledges the expense and length

of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals. Lead Plaintiff has also taken into account the uncertain outcome and the risk of any litigation. In particular, Lead Plaintiff has considered the inherent problems of proof and possible defenses to the federal securities law violations asserted in the Action, including the defenses that have been or could be asserted by Defendants during the litigation, motion for summary judgment, motion for class certification and trial. Lead Plaintiff has therefore determined that the Settlement set forth in this Stipulation is fair, adequate, reasonable, and in the best interests of the Settlement Class.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among Lead Plaintiff Vincent Yip (by and through his undersigned counsel on behalf of himself and the Settlement Class) and Defendants (by and through their undersigned counsel) that, subject to the approval of the Court, in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Action and the Released Claims as against the Released Parties shall be finally and fully compromised, settled and released, the Action shall be dismissed with prejudice and the Released Claims shall be finally and fully released as against the Released Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

1.      **Definitions**

In addition to the terms defined above, the following capitalized terms, used in this Stipulation, shall have the meanings specified below:

1.1.      "Action" means the putative class action captioned *Meyer v. Concordia International Corp., et al.,* 1:16-cv-06467 (S.D.N.Y.).

1.2.      "Administrative Costs" means all costs and expenses associated with providing notice of the Settlement to the Settlement Class and otherwise administering or carrying

out the terms of the Settlement. Such costs may include, without limitation: escrow agent costs, the costs of publishing the summary notice, the costs of printing and mailing the Notice and Proof of Claim, as directed by the Court, and the costs of allocating and distributing the Net Settlement Fund to the Authorized Claimants. Such costs do not include legal fees.

1.3.     "Authorized Claimant" means any Settlement Class Member who is a Claimant and whose claim for recovery has been allowed pursuant to the terms of this Stipulation, the exhibits hereto, and any order of the Court.

1.4.     "Business Day" means any day except Saturday or Sunday or any other day on which national banks are authorized by law or executive order to close in the State of New York.

1.5.     "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.6.     "Claims" means any and all manner of claims, debts, demands, controversies, obligations, losses, costs, interest, penalties, fees, expenses, rights, duties, judgments, sums of money, suits, contracts, agreements, promises, damages, causes of action and liabilities, of every nature and description in law or equity (including, but not limited to, any claims for damages, whether compensatory, special, incidental, consequential, punitive, exemplary or otherwise, injunctive relief, declaratory relief, recession or recessionary damages, interest, attorneys' fees, expert or consulting fees, costs, or expenses), accrued or unaccrued, known or unknown, arising under federal, state, common, administrative, or foreign law, or any other law, rule, or regulation.

1.7.     "Claims Administrator" means Strategic Claims Services which shall administer the Settlement. If Strategic Claims Services becomes unable or unwilling or unable to

perform its obligations under this Stipulation, Lead Counsel (See ¶1.17) shall designate an alternate claims administrator within fifteen (15) Business Days of receiving written notice from Strategic Claims Services.

1.8.      "Common Stock" means the shares of common stock of Concordia International Corp., formerly Concordia Healthcare Corp.

1.9.      "Defendants" means Concordia International Corp., Mark Thompson, Adrian de Saldanha, Edward J. Borkowski, and Wayne Kreppner.

1.10.      "Escrow Account" means an interest-bearing account established by the Escrow Agent at Amalgamated Bank. The Escrow Account shall be managed by the Escrow Agent for the benefit of Lead Plaintiff and the Settlement Class until the Effective Date of the Settlement, in accordance with the terms of the Stipulation and any order of the Court.

1.11.      The "Escrow Agent" means The Rosen Law Firm, P.A.

1.12.      "Effective Date" shall have the meaning set forth in ¶ 10.3 of this Stipulation.

1.13.      "Final" when referring to the Final Judgment means exhaustion of all possible appeals, meaning (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review of the Final Judgment, and (ii) if an appeal or request for review is filed, the day after the date the appeal or request for review is dismissed, or the Final Judgment is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise; provided, however, that no order of the Court or modification or reversal on appeal or any other order relating solely to the amount, payment, or allocation of attorneys' fees and expenses or to the Plan of Allocation shall constitute grounds for

cancellation or termination of this Settlement or affect its terms, including the release in ¶ 6.1, or shall affect or delay the date on which the Final Judgment becomes Final.

1.14.     "Final Judgment" means the order and judgment to be entered by the Court finally approving the Settlement and dismissing the Action, materially in the form attached hereto as Exhibit B.

1.15.     "Insurers" means, collectively, insurer(s) under each and every director and officer liability policy and any excess policy or reinsurance policy issued to Concordia International Corp. (formerly Concordia Healthcare Corp.) and covering the period January 6, 2016 through August 12, 2016.

1.16.     "Lead Plaintiff" means Vincent Yip.

1.17.     "Lead Counsel" means The Rosen Law Firm, P.A..

1.18.     "Notice" means the "Notice of Pendency and Proposed Settlement of Class Action," which is to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A-1.

1.19.     "Opt-Out" means any one of, and "Opt-Outs" means all of, any Persons who otherwise would be Settlement Class Members and who have timely and validly requested exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice given pursuant thereto.

1.20.     "Person" means an individual, corporation, fund, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.21.    "Plan of Allocation" means a plan or formula for allocating the Settlement Fund to Authorized Claimants after payment of Administrative Costs, Taxes and Tax Expenses, and such attorneys' fees, costs, and expenses as may be awarded by the Court. Any Plan of Allocation is not a condition to the effectiveness of this Stipulation, and the Released Parties shall have no responsibility or liability with respect thereto.

1.22.    "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class substantially in the form attached hereto as Exhibit A.

1.23.    "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached hereto as Exhibit A-2.

1.24.    "Related Parties" means, with respect to each Released Party and Releasing Party, the immediate family members, heirs, executors, administrators, successors, assigns, employees, officers, directors, attorneys, legal representatives, accountants, insurers, reinsurers, and agents of each of them, and any person or entity which is or was related to or affiliated with any Released Party or in which any Released Party has a controlling interest, and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, and the employees, officers, directors, attorneys, assigns, legal representatives, insurers, reinsurers, and agents of each of them.

1.25.    "Released Claims" means and includes any and all Claims (as defined in ¶ 1.6) and Unknown Claims (as defined in ¶ 1.36) that have been or could have been asserted by or on behalf of any of the Releasing Parties, in any capacity, which arise out of, are based upon, or relate in any way to the purchase or acquisition of Concordia securities during the Settlement Class Period, including but not limited to any claims alleged in the Action, and any claims related

to the allegations, transactions, facts, events, matters, occurrences, acts, disclosures, representations, omissions, or any other matter whatsoever involved, set forth, referred to, or otherwise related, directly or indirectly, to the allegations in the Action or the disclosures made in connection therewith (including the adequacy and completeness or such disclosures). Notwithstanding the foregoing, "Released Claims" does not include claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

1.26.    "Released Parties" means Defendants and their Related Parties.

1.27.    "Releasing Parties" means Lead Plaintiff, each and every Settlement Class Member, and their Related Parties.

1.28.    "Settlement" means the settlement contemplated by this Stipulation.

1.29.    "Settlement Amount" means the sum of $9,250,000.00 (Nine Million Two Hundred Fifty Thousand U.S. Dollars). The Settlement Amount includes all Administrative Costs, Lead Counsel's attorneys' fees and expenses, as allowed by the Court, Settlement Class Member benefits, as well as any other costs, expenses, or fees or any kind whatsoever associated with the Settlement.

1.30.    "Settlement Class" means all persons who purchased or acquired the securities of Concordia on a United States Exchange (shares purchased on a Canadian exchange are ineligible for compensation from the Settlement Amount) during the Settlement Class Period, except that excluded from the Settlement Class are all Defendants and their Related Parties and Settlement Class Members who file valid and timely requests for exclusion in accordance with the Court's Preliminary Approval Order.

1.31.    "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

**1.32.** "Settlement Class Period" means the period from January 6, 2016 through August 12, 2016, both dates inclusive.

**1.33.** "Settlement Fund" means all funds transferred to the Escrow Account pursuant to this Stipulation and any interest or other income earned thereon.

**1.34.** "Settlement Hearing" means the hearing at or after which the Court will make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether the Settlement contained in the Stipulation is fair, reasonable and adequate, and therefore, should receive final approval from the Court.

**1.35.** "Settling Party" means any one of, and "Settling Parties" means all of, the parties to the Stipulation, namely Lead Plaintiff (on behalf of himself and the Settlement Class) and Related Parties and Defendants and Related Parties.

**1.36.** "Unknown Claims" means all Claims of every nature and description which Lead Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Parties, or might have affected his, her, or its decision not to opt-out or object to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Final Judgment shall have waived, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiff shall expressly waive, and each of the Settlement Class Members shall be deemed

to have waived, and by operation of the Final Judgment shall have expressly waived, any and all

provisions, rights and benefits conferred by any law of any state, territory, foreign country or

principle of common law, which is similar, comparable or equivalent to California Civil Code §

1542. Lead Plaintiff and/or one or more Settlement Class Members may hereafter discover facts

in addition to or different from those which he, she or it now knows or believes to be true with

respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly fully, finally

and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall

be deemed to have, and by operation of the Final Judgment shall have, fully, finally and forever

settled and released, any and all Released Claims, known or unknown, suspected or unsuspected,

contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore

have existed, upon any theory of law or equity now existing or coming into existence in the future,

including, but not limited to, conduct which is negligent, intentional, with or without malice, or a

breach of fiduciary duty, law or rule, without regard to the subsequent discovery or existence of

such different or additional facts. Lead Plaintiff acknowledges, and the Settlement Class Members

shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing

waiver was separately bargained for and a key element of the Settlement of which this release is a

part.

      **2.**      **The Settlement Consideration**

      **2.1.**      In consideration of the full and final release, settlement and discharge

of all Released Claims against the Released Parties, within fourteen (14) calendar days after

receiving written notice that the Court has entered the Preliminary Approval Order, Defendants

and/or their Insurers shall transfer or cause to be transferred to the Escrow Account the Settlement

Amount, in its entirety, by wire transfer or check, provided that the Escrow Agent has provided Defendants' respective counsel with complete wire transfer information, instructions, and a completed Form W-9 at least three business days prior to the date of such payment.

2.2.     Under no circumstances will Defendants or any of their Insurers be required to pay, or cause payment of, more than the Settlement Amount pursuant to this Stipulation and the Settlement for any reason whatsoever, including, without limitation, as compensation to any Settlement Class Member, as payment of attorneys' fees and expenses awarded by the Court, or in payment of any fees or expenses incurred by any Settlement Class Member or Lead Counsel.

**3.      Handling And Disbursement Of Funds By The Escrow Agent**

3.1.     The Escrow Agent shall disburse no monies from the Settlement Fund until after the Effective Date and, then, only pursuant to this Court's Individual Practices except:

**(a)**     As provided in ¶ 8.2 below;

**(b)**     As provided in ¶ 10.9 below, if applicable; and

**(c)**     To pay Taxes and Tax Expenses (as defined in ¶ 4.1 below) on the income earned by the Settlement Fund. Taxes and Tax Expenses shall be paid out of the Settlement Fund and shall be considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent without prior Order of the Court.

3.2.     The Escrow Agent shall invest the Settlement Fund in short term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Escrow Agent shall bear all responsibility and liability for managing the Escrow Account and cannot assign or delegate its responsibilities without approval of the Settling Parties and the Insurers.

Defendants, their counsel, the Insurers and the other Released Parties shall have no responsibility for, interest in, or any liability whatsoever with respect to any investment or management decisions executed by the Escrow Agent. The Settlement Fund shall bear all risks related to the investments of the Settlement Amount in accordance with the guidelines set forth in this ¶ **3.2**.

       **3.3.**      The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of counsel for Defendants.

       **4.**      **Taxes**

       **4.1.**      The Settling Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, Lead Counsel or their designee shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ **4.1**, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel or their designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

       **(a)**      For purposes of § 1.468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B-2(k)(3) promulgated thereunder, the Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this ¶ 4.1) shall be consistent with this ¶ 4.1 and in all events shall reflect that all Taxes (including any

estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

   (b)   All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their counsel or their Insurers with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and all expenses and costs incurred in connection with the operation and implementation of this ¶ 4.1 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 4.1) ("Tax Expenses"), shall be paid out of the Settlement Fund, as appropriate. Defendants, their counsel, their Insurers and the other Released Parties shall have no liability or responsibility for the Taxes or the Tax Expenses with respect to the income earned by the Settlement Fund. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be withheld under Treasury Regulation § 1.468B-2(1)(2)). Defendants, their counsel, their Insurers and the other Released Parties shall have no responsibility for, interest in, or any liability whatsoever with respect to the foregoing provided in this ¶ 4.1. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the provisions of this ¶ 4.1.

5.      **Preliminary Approval Order, Notice Order, And Settlement Hearing**

5.1.      As soon as practicable after execution of this Stipulation, Lead Counsel shall submit this Stipulation and its exhibits to the Court and shall apply for preliminary approval of the Settlement set forth in this Stipulation, entry of a preliminary approval order, and approval for the mailing and dissemination of notice, substantially in the form of Exhibits A, A-1, A-2, and A-3. The mailed Notice (Exhibit A-1) shall include the general terms of the Settlement and the provisions of the Plan of Allocation, and shall set forth the procedure by which recipients of the Notice may object to the Settlement or the Plan of Allocation or request to be excluded from the Settlement Class. The date and time of the Settlement Hearing shall be added to the Notice before it is mailed or otherwise provided to Settlement Class Members. Defendants shall not object to, or have any responsibility for, Lead Counsel's proposed Plan of Allocation.

5.2.      At the time of the submission described in ¶ **5.1** hereof, the Settling Parties, through their counsel, shall jointly request that, after the Notice is provided, the Court hold the Settlement Hearing and (i) approve the Settlement as set forth herein and (ii) enter a Final Order and Judgment substantially in the form of Exhibit B hereto, as promptly after the Settlement Hearing as possible.

6.      **Releases And Covenants Not To Sue**

6.1.      Upon the Effective Date, the Releasing Parties, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, regardless of whether any such Releasing Party ever seeks or obtains by any means, including without limitation by submitting a Proof of Claim, any disbursement from the Settlement Fund, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the

Released Parties and shall have covenanted not to sue the Released Parties with respect to all such Released Claims, and shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claim, in any capacity, against any of the Released Parties. Nothing contained herein shall, however, bar the Releasing Parties from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

        **6.2.**      Upon the Effective Date, the Released Parties shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all claims they may have against the Releasing Parties related to the Releasing Parties' prosecution of the Action or any other known or unknown counter-claim related thereto and shall have covenanted not to sue the Releasing Parties with respect to any counterclaim, claim, or sanction related to the Released Claims, and shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any such claim, in any capacity, against any of the Releasing Parties, and agree and covenant not to sue any of the Releasing Parties on the basis of any such claim or to assist any third party in commencing or maintaining any suit against the Releasing Parties related to any such claim. Nothing contained herein shall, however, bar the Released Parties from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

        **6.3.**      The releases provided in this Stipulation shall become effective immediately upon occurrence of the Effective Date without the need for any further action, notice, condition, or event.  Lead Plaintiff and Settlement Class Members shall be deemed to acknowledge

that, as of the Effective Date, the releases given herein shall become effective immediately by operation of the Final Judgment and shall be permanent, absolute, and unconditional.

7. **Administration And Calculation Of Claims, Final Awards And Supervision And Distribution Of The Settlement Fund**

7.1.     Under the supervision of Lead Counsel, acting on behalf of the Settlement Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, the Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (as defined below) to Authorized Claimants.

7.2.     The Settlement Fund shall be applied as follows:

(a)     To pay the Taxes and Tax Expenses described in ¶ 4.1 above;

(b)     To pay Administrative Costs;

(c)     To pay Lead Counsel's attorneys' fees and expenses and payments to the Lead Plaintiff for reimbursement of his time and expenses (the "Fee and Expense Award"), to the extent allowed by the Court; and

(d)     To distribute the balance of the Settlement Fund, that is, the Settlement Fund less the items set forth in ¶ 7.2(a), (b), and (c) hereof (the "Net Settlement Fund"), plus all accrued interest, to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

7.3.     As soon as practicable after the Effective Date, the Claims Administrator shall distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of the Plan of Allocation set forth in the Notice and any orders of the Court.

7.4.     This is not a claims-made settlement. If all conditions of the Stipulation are satisfied and the Final Judgment becomes Final, then no portion of the Settlement Fund will

be returned to Defendants or the Insurers. Defendants, their counsel, their Insurers and the other Released Parties shall have no responsibility for, involvement in, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claims against Lead Counsel, the Claims Administrator or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, and/or orders of the Court. Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim filed, where doing so is in the interest of achieving substantial justice.

7.5.    The Settling Parties understand and agree that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a condition of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Final Judgment and the releases contained therein, or any other orders entered pursuant to this Stipulation.

7.6.    To assist in dissemination of notice, Concordia will make reasonable efforts to assist Lead Counsel in obtaining information concerning the identity of Settlement Class Members, including providing any names and addresses of Settlement Class Members and

nominees or custodians that exist in Concordia's transfer records ("Settlement Class Information") in electronic searchable form within ten (10) calendar days after the Court signs an order preliminarily approving the Settlement. The Parties acknowledge that any information provided to Lead Counsel by Concordia pursuant to this Paragraph shall be treated as confidential and will be used by Lead Counsel solely to deliver the Notice and/or implement the Settlement, including the Plan of Allocation.

## 8.    Lead Counsel's Attorneys' Fees And Reimbursement Of Expenses

8.1.    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund to Lead Counsel for: (i) an award of attorneys' fees from the Settlement Fund; (ii) reimbursement of actual costs and expenses, including the fees and expenses of any experts or consultants, incurred in connection with prosecuting the Action; and (iii) payments to Lead Plaintiff for reimbursement of their time and expenses in connection with the Action. Defendants shall take no position with respect to the Fee and Expense Application(s).

8.2.    The Escrow Agent shall approve no distribution from the Settlement Fund that does not comply with this Court's Individual Practices and/or an Order of this Court. In the event that the Effective Date does not occur, or the Final Judgment is reversed or modified in any way that affects the award of attorneys' fees and expenses, or the Stipulation is terminated for any other reason, then Lead Counsel shall be jointly and severally obligated to refund to the Escrow Account, within ten (10) Business Days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, either the full amount of the fees and expenses or an amount consistent with any modification of the Final Judgment with respect to the fee and expense award, including accrued interest at the same rate as is earned by the Settlement Fund. Lead Counsel, on

behalf of their firms and each partner and/or shareholder of their firms, agrees that the law firm and its partners and/or shareholders are subject to jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and each shall be jointly and severally liable for repayment of all attorneys' fees and expenses awarded by the Court. Furthermore, without limitation, Lead Counsel, and each such firm's partners and/or shareholders, agree that the Court may, upon application of Defendants, summarily issue orders, including, without limitation, judgments and attachment orders and may make appropriate findings of or sanctions for contempt against that firm or any of its partners and/or shareholders should such law firm fail timely to repay fees and expenses pursuant to this paragraph. Any amounts awarded by the Court to Lead Plaintiff for reimbursement of their time and expenses shall not be paid from the Settlement Fund until after the Effective Date.

8.3.     The procedure for, and allowance or disallowance by the Court of, the Fee and Expense Application are not a condition of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order of or proceeding relating to the Fee and Expense Application, or any objection to, motion regarding, or appeal from any order or proceeding relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation or otherwise affect or delay the finality of the Final Judgment or the releases contained therein or any other orders entered pursuant to this Stipulation.

8.4.     Any award of attorneys' fees and/or expenses to Lead Counsel or reimbursement payments to Lead Plaintiff shall be paid solely from the Settlement Fund and shall reduce the settlement consideration paid to the Settlement Class accordingly. No Defendant shall

have any responsibility for payment of Lead Counsel's attorneys' fees and expenses or other awards to Lead Plaintiff beyond the obligation of Defendants to cause the Insurers to fund the Settlement Amount as set forth in ¶ **2.1** above. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payments to Lead Counsel, Lead Plaintiff, the Settlement Class and/or any other Person who receives payment from the Settlement Fund.

**9.     Class Certification**

**9.1.**     In the Final Judgment, the Settlement Class shall be certified for purposes of this Settlement, but in the event that the Final Judgment does not become Final or the Settlement fails to become effective for any reason, all Settling Parties reserve all their rights on all issues, including class certification. For purposes of this settlement only, in connection with the Final Judgment, Defendants shall consent to (i) the appointment of Lead Plaintiff as the class representative, (ii) the appointment of Lead Counsel as class counsel, and (iii) the certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

**10.     Conditions Of Settlement, Effect of Disapproval, Cancellation Or Termination**

**10.1.**     Lead Plaintiff, on behalf of the Settlement Class, and Defendants shall each have the right to terminate the Settlement and Stipulation by providing written notice of his or its election to do so ("Termination Notice") to all other Settling Parties within seven (7) Business Days of:

(i)     entry of a Court order declining to enter the Preliminary Approval Order in any material respect;

(ii)     entry of a Court order refusing to approve this Stipulation in any material respect;

(iii)     entry of a Court order declining to enter the Final Judgment in any material respect;

(iv)     entry of a Court order refusing to dismiss the Action with prejudice;

(v)     entry of an order by which the Final Judgment is modified or reversed in any material respect by any appeal or review unless the Settling Parties otherwise consent, in writing, to the material modification;

(vi)     failure on the part of any Settling Party to abide, in any material respect, with the terms of this Stipulation. In the absence of any of the events enumerated in the preceding sentence, ¶ 10.2, ¶ 10.5 or ¶ 10.6, no Party shall have the right to terminate the Stipulation for any reason.

**10.2.**     If the Settlement Amount is not paid into the Escrow Account in accordance with ¶ **2.1** of this Stipulation, then Lead Plaintiff, on behalf of the Settlement Class, and not Defendants, shall have the right to (a) terminate the Settlement and Stipulation by providing written notice to Defendants at any time prior to the Court's entry of the Final Judgment; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein against Defendants and/or their Insurers.

**10.3.**     The Effective Date of this Stipulation ("Effective Date") shall not occur unless and until each of the following events occurs, and it shall be the date upon which the last in time of the following events occurs:

(a)     Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 10.5;

(b)     The Court has entered the Preliminary Approval Order attached hereto as Exhibit A or an order containing materially the same terms;

**(c)** Defendants and/or their Insurers pay the sum of $9,250,000.00 (Nine Million Two Hundred Fifty Thousand U.S. Dollars) into the Escrow Account, as set forth in ¶ 2.1;

**(d)** The Court has approved the Settlement, following notice to the Settlement Class and the Settlement Hearing, and has entered the Final Judgment;

**(e)** The Final Judgment has become Final as defined in ¶ 1.13; and

**(f)** The Court dismisses the Action with prejudice.

**10.4.** Upon the occurrence of the Effective Date, any and all interest or right of Defendants or the Insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.

**10.5.** If prior to final Court approval of the Settlement, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the notice given pursuant thereto ("Opt-Outs"), and such Persons in the aggregate purchased securities during the Settlement Class Period in an amount greater than the amount specified in a separate Supplemental Agreement between the parties ("Supplemental Agreement"), then Defendants shall have, in their sole and absolute discretion, the option to terminate this Stipulation and Settlement in strict accordance with the requirements and procedures set forth in the Supplemental Agreement ("Supplemental Termination Option"). The Supplemental Agreement shall not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises.

**10.6.** If some or all of the conditions specified in ¶ **10.3** above are not met, or in the event that the Court does not approve this Stipulation, or the Settlement set forth in this

Stipulation is terminated or fails to become effective in accordance with its terms, then this Stipulation shall be canceled and terminated, unless all of the Settling Parties agree in writing to proceed with this Stipulation, except that Defendants shall not have the right to terminate the Stipulation if the Settlement Amount is not paid pursuant to ¶ **2.1**. None of the Settling Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than those provided for and agreed herein. If any Settling Party engages in a material breach of the terms hereof, any other Settling Party, provided that it is in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to all the Settling Parties.

**10.7.**        In the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, the Settling Parties shall be restored to their respective positions in the Action immediately prior to November 5, 2018, and they shall proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action shall be preserved without prejudice.

**10.8.**        In the event that the Court does not approve the Stipulation or a Settling Party terminates the Settlement set forth in this Stipulation or the Settlement fails to become effective in accordance with its terms, the terms and provisions of this Stipulation, except as otherwise provided herein, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

**10.9.**        In the event the Stipulation shall be terminated, or be canceled, or shall not become effective for any reason, within seven (7) Business Days (except as otherwise provided

in the Supplemental Agreement) after the occurrence of such event, the Escrow Agent shall return to Defendants or their Insurers the Settlement Fund (less taxes already paid and any Administrative Costs which have either been disbursed or are determined to be chargeable), in proportion to their contribution to the Settlement Fund, plus accrued interest attributable to that amount by check or wire transfer pursuant to written instructions from Defendants and/or their Insurers. At the request of Defendants or their Insurers, the Escrow Agent or their designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Defendants and/or the Insurers pursuant to written direction from the Insurers.

10.10.    No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the Fee and Expense Application shall constitute grounds for cancellation or termination of the Stipulation.

**11.    No Admission Of Liability Or Wrongdoing**

11.1.    The Settling Parties covenant and agree that neither this Stipulation, nor the fact of or any term of the Settlement, nor any communication relating thereto, nor the Supplemental Agreement, is evidence, or an admission or concession by any Settling Party or their counsel, any Settlement Class Member, or any of the Released Parties, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or asserted in any such action or proceeding. This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by any Settling Party, Settlement Class Member, or any of the Released Parties, or any damages or injury to any Settling Party, Settlement Class Member, or any Released Parties. Neither this Stipulation, nor the

Supplemental Agreement, nor any of the terms and provisions of this Stipulation or the Supplemental Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith, (a) shall (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any, liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any Released Party, or of any infirmity of any defense, or of any damages to the Lead Plaintiff or any other Settlement Class Member, or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact or any purported liability, fault, or wrongdoing of the Released Parties or any injury or damages to any person or entity, or (b) shall otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Stipulation or the Supplemental Agreement or the Final Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to enforce the Settlement or Supplemental Agreement or Final Judgment, or as otherwise required by law.

### 12.    Miscellaneous Provisions

12.1.    Except in the event of the filing of a Termination Notice pursuant to ¶¶ **10.1**, **10.2**, **10.5** or **10.6** of this Stipulation or termination notice in accordance with the parties' Supplemental Agreement, the Settling Parties shall take all actions necessary to consummate this agreement; and agree to cooperate with each other to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation.

12.2.        The Settling Parties and their counsel represent that they will not encourage or otherwise influence (or seek to influence) any Settlement Class Members to request exclusion from, or object to, the Settlement.

12.3.        Each of the attorneys executing this Stipulation, any of its exhibits, or any related settlement documents on behalf of any Settling Party hereto hereby warrants and represents that he or she has been duly empowered and authorized to do so by the Settling Party he or she represents.

12.4.        Lead Plaintiff and Lead Counsel represent and warrant that the Lead Plaintiff is a Settlement Class Member and that none of Lead Plaintiff's claims or causes of action against one or more Defendants in the Action or referred to in this Stipulation, or that could have been alleged against one or more Defendants in the Action, have been assigned, encumbered or in any manner transferred in whole or in part.

12.5.        This Stipulation, together with the Supplemental Agreement, constitutes the entire agreement between the Settling Parties related to the Settlement and supersedes any prior agreements. No representations, warranties, promises, inducements or other statements have been made to or relied upon by any Settling Party concerning this Stipulation, other than the representations, warranties and covenants expressly set forth herein and in the Supplemental Agreement. Lead Plaintiff, on behalf of themselves and the Settlement Class, acknowledge and agree that any and all other representations and warranties of any kind or nature, express or implied, are specifically disclaimed and were not relied upon in connection with this Stipulation. In entering this Stipulation, the Settling Parties relied solely upon their own knowledge and investigation. Except as otherwise provided herein, each Settling Party shall bear its own costs.

**12.6.**     This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their counsel or their respective successors in interest.

**12.7.**     This Stipulation shall be binding upon, and shall inure to the benefit of, the Settling Parties and their respective agents, successors, executors, heirs, and assigns.

**12.8.**     The Released Parties who do not appear on the signature lines below, including but not limited to Concordia, Mark Thompson, Adrian de Saldanha, Edward J. Borkowski, and Wayne Kreppner, are acknowledged and agreed to be third party beneficiaries of this Stipulation and Settlement.

**12.9.**     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

**12.10.**     This Stipulation may be executed in any number of counterparts by any of the signatories hereto and the transmission of an original signature page electronically (including by facsimile or portable document format) shall constitute valid execution of the Stipulation as if all signatories hereto had executed the same document. Copies of this Stipulation executed in counterpart shall constitute one agreement.

**12.11.**     This Stipulation, the Settlement, the Supplemental Agreement and any all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles.

**12.12.**     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

12.13.  The Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

12.14.  Lead Plaintiff, Lead Counsel, and the attorneys, staff, experts, and consultants assisting them in these Action agree that (a) they will not intentionally assist or cooperate with any person or entity in the pursuit of legal action related to the subject matter of these Action against the Released Parties, (b) they will not intentionally assist or cooperate with any person or entity seeking to publicly disparage or economically harm the Released Parties with respect to any matter relating to the subject matter of these Action, and (c) they will not discuss any confidential matters related to these Action or the Settlement with anyone.

12.15.  All agreements by, between or among the Settling Parties, their counsel and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

12.16.  The Settling Parties shall not assert or pursue any action, claim or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure and/or the Private Securities Litigation Reform Act of 1995 in connection with the Action, the Settlement, the Stipulation or the Supplemental Agreement. The Settling Parties agree that the Action were resolved in good faith following arm's-length bargaining, in full compliance with applicable

requirements of good faith litigation under the Securities Exchange Act of 1934, Rule 11 of the Federal Rules of Civil Procedure and/or the Private Securities Litigation Reform Act of 1995.

12.17.    Any failure by any of the Settling Parties to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

12.18.    The waiver, express or implied, by any Settling Party of any breach or default by any other Settling Party in the performance of such Settling Party of its obligations under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

12.19.    The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated: December 20, 2018

**THE ROSEN LAW FIRM, P.A.**

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg
Gonen Haklay
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA  19046
Phone: (215) 600-2817
Fax: (212) 202-3827
Email:  jgoldberg@rosenlegal.com
          ghaklay@rosenlegal.com
          lheifetz@rosenlegal.com

Phillip Kim (PK 9384)

Laurence M. Rosen (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY  10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
          pkim@rosenlegal.com

*Counsel for Lead Plaintiff and the Class*

Dated: December 20, 2018                    **NORTON ROSE FULBRIGHT US LLP**

*/s/ Peter A. Stokes*
Mark A. Robertson
Marc D. Ashley
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
mark.robertson@nortonrosefulbright.com

Gerard G. Pecht (admitted *Pro Hac Vice*)
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
gerard.pecht@nortonrosefulbright.com

Peter A. Stokes (admitted *Pro Hac Vice*)
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701-2978
Telephone: (512) 536-5287
Facsimile: (512) 536-4598
Peter.Stokes@nortonrosefulbright.com

*Counsel for Defendants Concordia*
*International Corp., Mark Thompson,*
*Adrian de Saldanha, Edward Borkowski and*
*Wayne Kreppner*

## <u>CERTIFICATE OF SERVICE</u>

I, Jacob A. Goldberg, hereby declare under penalty of perjury as follows:

I am an attorney with the Rosen Law Firm, P.A., with offices at 101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046. I am over the age of eighteen. On December 21, 2018, I electronically filed the foregoing **STIPULATION AND AGREEMENT OF SETTLEMENT** and the Exhibits thereto using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on December 21, 2018                          /s/ Jacob A. Goldberg
                                                                            Jacob A. Goldberg, Esq.